**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

PEGGY BEERS, Administrator for the Estate of Danny Wayne Barnes,

Plaintiff-Appellant,

v.

PAT BALLARD, Sheriff, Washington County; JAMES M. ABRAHAM, General Administrator, Washington County Jail,

Defendant-Appellees.

No. 06-5104
(D.C. No. 04-CV-860-CVE-SAJ)
(N. Dist. Okla.)

## ORDER AND JUDGMENT*

Before **BRISCOE**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

Danny Wayne Barnes died in custody at the Washington County Jail. His estate, administered by Peggy Beers, and Ms. Beers on behalf of Mr. Barnes' minor daughter (the Family) appeal the district court's determinations in favor of Washington County Sheriff Pat Ballard and Jail Administrator Lieutenant James

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH CIR. R. 32.1.

Abraham. We affirm.

Mr. Barnes was convicted of driving under the influence in Washington County, Oklahoma and sentenced to five years imprisonment with all but sixty days suspended. He suffered from a number of diagnosed ailments, including high blood pressure, diabetes, anxiety, and back pain, for which he was treated with four prescription medicines. While in custody, he expended his supply of hydrocodone, a pain-reliever, and filed both a prisoner medication request form and a grievance form discussing his failure to receive hydrocodone and blood pressure medication. According to the jail medical log, Mr. Barnes missed doses of pain medication on eleven days between September 20, 2002 and October 2, 2002. He was consistently administered hydrocodone or oxycodone, a medicine with similar pain relieving properties, from October 3 to October 19. Mr. Barnes intermittently missed other medications while incarcerated, including one dose of actos and two doses of glucotrol, both diabetes medications, and one dose of cozaar, a heart medication.

On the morning of October 19, at 8:09 A.M., an inmate trustee notified Officers Travis Hurd and Timothy Inda that Mr. Barnes had collapsed in his jail cell. Pursuant to prison policies, an officer may only enter an occupied jail cell in the presence of one or more fellow officers. At the time of Mr. Barnes' collapse, Officer Inda was unavailable to intervene because he was serving as a dispatcher.

Officer Hurd was the officer both present and available to enter Mr. Barnes' cell. Unable to enter alone, he requested back-up assistance from the Bartlesville Police Department. James Beisely, an officer patrolling nearby, was dispatched to the prison soon thereafter. Attending to Mr. Barnes after his arrival, Officer Beisely performed CPR and requested an ambulance, which took Mr. Barnes to a nearby hospital.[1] He persisted in a vegetative state for several weeks and died after the Family withheld further treatment. An autopsy revealed his death was caused by "[h]ypoxic encephalopathy secondary to cardiac arrest associated with acute myocardial infraction," a cause of death characterized in layman's terms by the district court as cardiac arrest resulting in deprivation of adequate oxygen to the brain. App. Appx. at 385-86.

The Family filed a claim against Sheriff Ballard, Lt. Abraham, and the Board of County Commissioners of Washington County. They alleged under 42 U.S.C. § 1983 that defendants were deliberately indifferent to Mr. Barnes' medical needs in violation of the Eighth Amendment, and that their indifference was the proximate cause of his coma and death. The district court granted

[1]The Family asserts "a period of thirty-five (35) minutes lapsed" between "the initial discovery of [Mr. Barnes] until the ambulance arrived," aplt. br. at 12, while defendants claim "[t]he ambulance . . . arrived only nine (9) minutes after the officers were first alerted to the 'man down.'" Aple. Br. at 10. The district court said "[t]he overwhelming evidence is that . . . 12 minutes passed between notification of 'man down' . . . and arrival of EMT personnel." Aplt. App. at 419. As is evident from the following discussion, the exact length of delay is not determinative.

summary judgment to the Board, Lt. Abraham, and Sheriff Ballard except as to the Family's claim against Sheriff Ballard in his official capacity, which alleged he failed to adequately train or supervise jail personnel with deliberate indifference to a substantial risk of serious harm to Mr. Barnes. After the Family's presentation of evidence, Sheriff Ballard was granted judgment as a matter of law. On appeal, the Family contends the district court erred in (1) granting qualified immunity to Sheriff Ballard and Lt. Abraham, (2) concluding the Family failed to prove deliberate indifference and proximate causation, and (3) denying the Family the opportunity to introduce evidence of the jail grievance procedure.

We review a district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court. *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007). Summary judgment should be granted "if the pleadings . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In conducting our review, "[w]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997). We also review *de novo* the district court's order granting judgment as a matter of law. *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1287 (10th Cir. 2006). We will "uphold a [judgment as a matter of law] only if the evidence

points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found." *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 2006). Finally, we review evidentiary rulings for an abuse of discretion. *United States v. Cestnik*, 36 F.3d 904, 906 (10th Cir. 1994).

Where a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate that "the defendant violated one of his or her constitutional or statutory rights," and "that the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). Prison officials violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment when they are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, the plaintiff must show the medical need was objectively serious, and that the prison official subjectively "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Even where there is a sufficiently serious medical need, however, delayed "medical care only constitutes an Eight Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210.

There are two potential "substantial harms" attributable to the delay in attending to Mr. Barnes after his collapse. First, Mr. Barnes may have suffered from greater or more prolonged pain, a cognizable substantial harm. *See id.* at 1210 n.5 ([T]here is factual evidence from which a jury could conclude that the delay occasioned by . . . inaction unnecessarily prolonged appellant's pain and suffering."); *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001) ([T]he delay . . . caused substantial harm due to the fact that . . . Oxendine experienced considerable pain."). Second, the time-frame for administering life-saving treatment could have passed during the period of delay; if such treatment had a realistic chance of success, the prison's dilatory response could be said to have proximately caused his death. *See Lewis v. Wallenstein*, 769 F.2d 1173, 1183 (7th Cir. 1985) ("[C]ausal connection existed between" doctor's fifteen minute delay in attending to inmate and inmate's death from cardiac arrest).

But there is no evidence here that Mr. Barnes suffered additional pain or that the prison's untimely response precluded possible life-saving treatment. As to pain, the Family acknowledges that Mr. Barnes was already "unconscious" at the time the prison officials were notified of his condition. Aplt. App. at 157. With respect to his death, the Family asserts it "does not require a leap into the realm of medical uncertainty to" conclude there was causation. *Id.* at 173. Yet, large leap or short hop, plaintiffs must prove causation. The Family deposed Mr. Barnes' primary care doctor, Dr. Jerry Jarrell, but he did not suggest untimely

medical care precipitated Mr. Barnes' coma. No other medical expert testified about the health effects of the delay and the Family introduced no evidence associating Mr. Barnes' coma and death with a *delay* in treatment, or any testimony suggesting the outcome would have differed with a quicker response. It is certainly possible that Mr. Barnes would have suffered the same fate even with expeditious care. In this factual vacuum, we decline to speculate whether someone with Mr. Barnes' preexisting medical problems and acute heart condition would have fared better with prompter treatment.[2]

---

[2]*Lewis v. Wallenstein*, 769 F.2d 1173, 1183 (7th Cir. 1985), provides an example of the kind of evidence that can demonstrate causation in a delayed treatment, deliberate indifference case like the one at hand. In *Wallenstein*, a doctor deliberately delayed responding to multiple emergency calls and attended to a prisoner in cardiac arrest ten to fifteen minutes after he was first notified. The patient/prisoner died from the heart condition. At trial, a physician testified.

> a twenty-seven-year-old person with no prior heart disease [like the decedent] found unconscious but with a feeble pulse has an excellent chance of being resuscitated if advanced cardiac life support is provided within two minutes. [The physician] found his opinion supported by a study, the data of which established that if basic life support is provided within five minutes and advanced cardiac life support within eight to ten minutes, the patient's chance for survival would be 10-30%. Finally, [he] testified that a person with a feeble pulse is not yet in full cardiac arrest; the chance of successful resuscitation in such a case is greatly enhanced.

*Id.* at 1183. The resulting loss of a 10-30% chance of survival was "sufficient evidence to support . . . a direct causal relationship between [the doctor]'s deliberate indifference and [the patient]'s death." *Id.* at 1184.

In this case, the Family could have presented a medical professional to testify about causation. The district court denied summary judgment to defendants because the Family "present[ed] genuine issues of material fact as to whether the alleged delay in treatment for inmate's cardiac arrest may

The Family also contends Mr. Barnes' missed diabetes, blood pressure, and pain medication "subject[ed] him to future cardiovascular harm." Aplt. Br. at 21. There is no indication that the few skipped doses precipitated his cardiac arrest, s*ee* Aplt. App. at 234 (Dr. Jarrell testified that higher blood sugar results in "higher incidence of cardiovascular events . . . referring to years [of elevated blood sugar], not hours or days."), and there is therefore no causal link between the missing medications and Mr. Barnes' death.

The Family also asserts the missed doses of pain medication "subject[ed] him to unnecessary pain." Aplt. Br. at 21. Mr. Barnes documented his pain in the medical and grievance forms he submitted to prison officials. *See* Aplt. App. at 287 (listing "back & hand pain"); *id.* at 285 (stating that "pain hurtin[g]"). The causation defect that derailed the Family's previous claims is thus not present here. But, as noted above, the harm caused by a delay in treatment must be "substantial" to present an Eight Amendment violation. *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (The "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain."). Where pain is the claimed harm, "'not every twinge . . . suffered as a result of delay in medical care is actionable," *Sealock*, 218 F.3d at 1210; "when the pain

---

have decreased decedent's chance of survival," thus leaving the question of causation for trial. Aplt. App. at 395. In their case in chief, however, the Family failed to present testimony that would resolve this material fact issue in their favor.

experienced during the delay is substantial, the prisoner sufficiently establishes the objective element of the deliberate indifference test." *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (quotation omitted). In previous cases, we have held that twelve hours of tormenting, debilitating pain accompanied by severe vomiting, *see id.* at 1293, and "considerable pain [experienced] while [a] finger continued to rot," *Oxendine*, 241 F.3d at 1278, constituted substantial harm.

The record here does not suggest the discomfort Mr. Barnes suffered as a result of his missed medication was of sufficient severity to be substantial. The record is simply too barren to reach that conclusion. For example, Dr. Jarrell made no comment as to the nature and severity of Mr. Barnes' original pain complaints. His deposition does not indicate where Mr. Barnes placed his discomfort on a pain scale or whether this was a minor recurring discomfort or a debilitating pain. Because pain medications are widely prescribed to allay both minor and severe pain, the prescription alone provides little indication of the pain severity. Mr. Barnes was certainly in some distress while imprisoned, *see* aplt. app. at 285 (complaining pain was interrupting his sleep), but the record simply does not support a conclusion that the pain was "substantial."

Given that the Family cannot meet the first, objective prong of the deliberate indifference analysis, they failed to satisfy the first prong of the

qualified immunity test. Furthermore, as evidenced by the above discussion, they also failed to prove deliberate indifference and proximate causation. Finally, we are not persuaded the district court abused its discretion when it denied the Family an opportunity to offer evidence of the Washington County Jail's grievance procedure.

Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge