**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Rachel Macon, as Administrator and<br>Personal representative of the Estate<br>Of Marquiel D. Ross, Deceased; and<br>Danielle Ross, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>1.State of Oklahoma *ex rel.* Oklahoma<br>Department of Corrections;<br>2.Kameron Christopher Harvanek;<br>3.Brittany Ann Chastang;<br>4.Destine Hayes;<br>5.Jacob Killion;<br>6.Bradley Mooney;<br>7.Tommy Lee Stranahan;<br>8.Kimberly Renee Hall;<br>9.Ashley L. Bills;<br>10.Justin Russell Jordan;<br>11.Dustin Carl Henry;<br>12.Dustin Eugene Willbanks;<br>13.Nanci Sue Battles; and<br>14.John and Jane Does 1-10, all individual<br>Defendants sued in their individual<br>capacities.<br><br>Defendants. | ) | Case No. 26-CV-2519-J |

**<u>DEFENDANT DUSTIN WILLBANKS' MOTION TO DISMISS</u>**

Defendant Dustin Eugene Willbanks, in his individual capacity, respectfully moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims asserted against him in Plaintiffs' Complaint. The Complaint names Willbanks in three Oklahoma-law counts only: Count IV (negligence and gross negligence), Count VI (intentional infliction of

emotional distress) and Count VIII (Oklahoma civil conspiracy). Each claim fails as a matter of law. In support of this motion, Willbanks states as follows.

## INTRODUCTION

This action arises from the death of Marquiel Ross, an inmate killed by his cellmate at the Oklahoma State Penitentiary ("OSP") on September 12, 2024. Plaintiffs filed this action alleging federal and state claims against twelve individuals and ten unidentified Does by sorting them into five functional groups and alleging, largely on information and belief, what those groups collectively did. Willbanks, an OSP supervisor, is not alleged to have had any contact with Ross before or after his death. The Complaint's only concrete allegations about Willbanks concern the custody of Harris after Ross's death, as Willbanks assumed watch over Harris at about 2:52 pm; Willbanks escorted Harris to an Office of the Inspector General ("OIG") interview at about 4:17 pm and later participated in his placement, assessment or testing; and with Supervisor Mooney, gave Harris different clothing at about 4:45pm. [Doc. 1-2 at 41]. Guarding an inmate suspected of homicide, delivering him to investigators, and providing him with clothing are ordinary correctional duties. Willbanks is immune from liability under Oklahoma Governmental Tort Claims Act ("GTCA").

## STATEMENT OF THE CASE

Marquiel Ross was received into the custody of the Oklahoma Department of Corrections ("ODOC") on March 29, 2023, to serve a two-year sentence, and remained in custody until his death on September 12, 2024. While housed at OSP, Ross was celled with Justin Harris, beginning on September 11, 2024. [Doc. 1-2, ¶30]. On September 12, 2024, Ross

was found unresponsive in his cell and died. *Id.* at ¶35. Harris has since been charged with first-degree murder as a result of Ross's death.

Plaintiffs first sued ODOC and others in Oklahoma County on April 7, 2025. Defendants removed the case to the Western District of Oklahoma, Case No. CIV-25-472-CMS. On June 11, 2025, the Court dismissed ODOC because the Eleventh Amendment barred federal damages relief and ODOC is not a "person" under § 1983. The twelve individual defendants, including Willbanks, were added by amendment but never served, and on March 12, 2026, the Court dismissed them without prejudice under Rule 4(m) for nonservice. Plaintiffs then filed the present Complaint on August 6, 2026, again naming Willbanks in his individual capacity.

The individualized factual allegations concerning Willbanks are these:

1. Willbanks is an OSP supervisor. [Doc. 1-2 at ¶7]
2. Willbanks assumed watch over [Harris] at about 2:52 pm. *Id.* at ¶41.
3. Willbanks, along with Defendant Battles, escorted [Harris] to an OIG interview at 4:17 and later participated in placement, assessment, or testing. *Id.*
4. Willbanks and Mooney gave Harris different clothing at about 4:45 pm. *Id.* at ¶ 41.

From those custodial tasks, Plaintiffs allege that Willbanks, along with Mooney and Battles, "thereby had custody of Harris and control over his statements, clothing, biological material, and other evidence," that the incident report "does not establish collection, separate bagging, labeling, preservation, or complete pre-change chain of custody for his original clothing or other evidence, and Willbanks, along with Mooney and Battles, "knowingly failed to preserve or document that evidence, ratified its incomplete handling, or used the resulting gaps to

obscure the timing, mechanism, and circumstances of Ross's death." *Id.* at ¶41. The remaining references to Willbanks are group labels, as he is placed in the "Death-Scene and Investigation Defendants" group. *Id.* at ¶10. Against Willbanks, Plaintiffs assert Count IV (negligence and gross negligence), Count VI (intentional infliction of emotional distress) and Count VIII (Oklahoma civil conspiracy). However, Willbanks is immune from liability under the GTCA.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction of the subject matter." A Rule 12(b)(1) motion "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). "The burden of establishing subject matter jurisdiction is on the

party asserting jurisdiction." *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1189 (10th Cir. 2008) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

## ARGUMENT AND AUTHORITIES

### Proposition I: The Oklahoma Governmental Tort Claims Act bars the state-law claims against Willbanks.

Willbanks is an ODOC employee, and the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 *et seq.*, forecloses individual tort liability for acts within the scope of her employment. Before the GTCA, the State and its agencies enjoyed common-law sovereign immunity. The GTCA "adopts the doctrine of sovereign immunity" and provides that the State and its employees acting within the scope of employment "shall be immune from liability for torts," waiving immunity only to the extent provided in the Act. 51 O.S. § 152.1(A)-(B).. The GTCA is the exclusive remedy for the torts of governmental employees. *Fuller v. Odom*, 741 P.2d 449, 452 (Okla. 1987); 51 O.S. § 153(B). Scope of employment means "performance by an employee acting in good faith within the duties of the employee's office or employment." 51 O.S. § 152(13).

Critically, "[i]n no instance . . . shall an employee of the state . . . acting within the scope of employment be named as a defendant." 51 O.S. § 153(C). Plaintiffs' own allegations establish that Willbanks acted within the scope of his employment at all relevant times: he assumed watch over Harris at 2:52 pm; he escorted Harris to the OIG interview and later participated in placement, assessment or testing; and he provided Harris with different clothing. [Doc. 1-2 at ¶41]. There are no facts showing he acted in bad faith, nor any non-conclusory allegation that he acted in bad faith. *See Carswell v. Okla. State Univ.*, 1999 OK 102, ¶ 4, 995 P.2d 1118, 1120 (dismissing employees where the plaintiff offered no factual grounds

that they acted maliciously or in bad faith). A "government employee acting within the scope of employment is relieved from private liability for tortious conduct." *Martin v. Johnson*, 1998 OK 127, ¶ 28, 975 P.2d 889, 895; *accord Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶ 4, 63 P.3d 535, 537.

Any remedy for within-scope conduct lies against the State, which is itself exempt from liability for "[p]rovision, equipping, operation or maintenance of any prison" and for "injuries by a prisoner to any other prisoner." 51 O.S. § 155(25); *Medina v. State*, 1993 OK 121, 871 P.2d 1379; *Barrios v. Haskell*, 2018 OK 90. This expressly includes the "security of the facility" and "any other services provided for inmates." *Medina* at 1384, n. 13. In fact, "the [Oklahoma] Supreme Court's broad reading of this exception makes it impossible to imagine any act of a prison's employee, done within the scope of employment, that is not also in furtherance of the operation of a prison." R*owell v. Bd. of Cnty. Commissioners of Muskogee Cnty.,* 2021 OK CIV APP 7, ¶19, 485 P.3d 879, 883. The Complaint makes it clear that any action by Willbanks was done in the furtherance of the operation of the prison, namely guarding an inmate suspected of homicide, transporting him to an interview, and then providing different clothing.

Plaintiff attempts to get around the GTCA exemption by alleging, without support, that Willbanks acted "willfully, maliciously, corruptly, in bad faith, or otherwise outside the scope of employment." [Doc. 1-2 at ¶64] However, such unsupported conclusory allegations are impermissible. "In considering whether the complaint's allegations are sufficient, the court first eliminate conclusory allegations, mere 'labels and conclusion,' and any 'formulaic recitation of the elements of a cause of action." *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022), quoting Twombly, 550 U.S. at 555. Conclusory labels of "willful" or "bad faith,"

unsupported by facts, do not place an employee outside the scope of employment. *AKC ex rel. Carroll v. Lawton Indep. Sch. Dist. No. 8*, 9 F. Supp. 3d 1240 (W.D. Okla. 2014); *see Carswell v. Okla. State Univ.*, 1999 OK 102, ¶ 4, 995 P.2d 1118, 1120 (dismissing employees where the plaintiff offered no factual grounds that they acted maliciously or in bad faith). And allegations of "reckless disregard" do not automatically rise to malice or bad faith. *Gowens v. Barstow*, 2015 OK 85, 364 P.3d 644.

Nor can Plaintiffs avoid dismissal on the theory that scope of employment is a fact question. The issue of scope of employment goes to the jury only where reasonable minds could differ on the facts; it is decided as a matter of law "in cases where only one reasonable conclusion can be drawn from the facts." *Nail v. City of Henryetta*, 1996 OK 12, ¶ 13, 911 P.2d 914, 918. In *Nail*, the issue was an assault by a police officer. while recognizing that as a general rule, assault was not within the scope of employment, there the court recognized that officer was not necessarily trying to hurt the plaintiff, and therefore there was a question of whether he was acting within the scope of his employment. *Id.* at ¶¶12-13, 911 P.2d at 918. Here, by contrast, the only acts pleaded against Willbanks are routine custodial tasks, clearly within the scope of employment. The only facts offered to show bad faith are that the Incident Report "does not establish" how Harris's original clothing was collected and an information-and-belief assertion that the custodians acted knowingly. [Doc. 1-2 at ¶ 41]. What a report does not say is not a fact about what Willbanks did. The Complaint does not allege that Willbanks discarded, altered, or hid any item, made any false statement, prepared any record, or communicated with anyone about Ross's death.

Willbanks was acting within the scope of his employment in the furtherance of the operations of a prison. Willbanks' good-faith performance of lawfully assigned tasks is the definition of acting within the scope of employment. That within-scope employment cannot support Count IV (negligence and gross negligence), Count VI (intentional infliction of emotional distress), or Count VIII (Oklahoma civil conspiracy) against him individually.

**Proposition II: Count VI fails to state a claim for intentional infliction of emotional distress.**

Count VI is brought by Danielle Ross individually, for injuries caused by post-death conduct. [Doc. 1-2 at ¶¶5, 68]. To state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. The trial court acts as a "gatekeeper" and must first determine whether the defendant's conduct "is reasonably be regarded as sufficiently extreme and outrageous" to permit recovery. *Warren v. U.S. Specialty Sports Ass'n*, 138 P.3d 580, 585 (Okla. Civ. App. 2006), see also *Eddy v. Brown*, 1986 OK 3, ¶6, 715 P.2d 74, 76.. Liability attaches only where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Breeden v. League Servs. Corp.*, 1978 OK 27, ¶ 15, 575 P.2d 1374, 1377-78. Whether conduct is extreme and outrageous "must be considered in the setting in which the conduct occurred." *Est. of Trentadue ex rel. Aguilar v. United States,* 397 F.3d 840, 856–858 (10th Cir. 2005)). Conduct "which, though unreasonable, is neither 'beyond all bounds of decency' in the setting in which it occurred, nor is one that

can be 'regarded as utterly intolerable in a civilized community,' falls short of having actionable quality." *Eddy v. Brown,* 1986 OK 3, ¶ 7, 715 P.2d 74, 77.

Nothing alleged about Willbanks meets the threshold for extreme and outrageous behavior. The only acts attributed to Willbanks (guarding Harris, escorting him to investigators, participating in his placement, assessment, or testing, and giving him different clothing) were directed at Harris, and not at Ross or his family. *Id.* at ¶41.

Conduct undertaken during one's job duties is not outrageous, atrocious, or beyond all possible bounds of decency as a matter of law. See *Ishmael v. Andrew*, 2006 OK CIV APP 82, ¶20, 137 P.3d 1271, 1277 (finding "in the context of a workplace investigation" falsely accusing an employee of contaminating a drink was not extreme and outrageous). Willbanks' alleged conduct was in the scope of his job duties and would not cause "an average member of the community" to "exclaim, 'Outrageous!'" *Breeden,* 1978 OK 27 at 8, 575 P.2d at 1376, quoting Section 46, Restatement of Trots (Second) at comment d. Where "reasonable persons would not differ" that the conduct falls short of the beyond-all-bounds standard, dismissal at the gatekeeper stage is required. *Id.* at ¶15, 1377.

Plaintiffs claim rests on (1) ODOC falsely told the family that Ross had transferred to higher security; (2) ODOC personnel reported the date of death as September 17 and (3) ODOC personnel initiated cremation steps. [Doc. 1-2 at ¶43-44]. However, the Complaint does not allege that Willbanks had a role in any of the post-death actions. There are no facts alleging Willbanks made any statement to the family, prepared or transmitted any death, transfer, or release record, communicated with the Medical Examiner or any funeral home, or had any role in notification and cremation. Instead, the Complaint lumps Willbanks with five

other named defendants and unidentified Does, alleging they collectively "participated in, directed, approved, or ratified those acts; transmitted communications or records furthering those acts; or knowingly failed to correct them." *Id.* at ¶45. Such pleading tactic gives Willbanks no notice of what he is alleged to have done, which is precisely what *Robbin*s forbids. *Robbins v. Oklahoma* 519 F.3d 1242, 12 50 (10th Cir. 2008) (finding "it is particularly important" that a complaint "make clear exactly who is alleged to have done what to whom," so as to provide each individual defendant fair notice of the claims against that defendant "as distinguished from collective allegations).

Regardless, the conduct pled by Plaintiffs falls short of extreme and outrageous conduct. The Tenth Circuit has only found conduct extreme and outrageous where the government shipped a federal inmate's battered, secretly autopsied body to an unsuspecting grieving family and concealed the circumstances of death. conduct that "needlessly and recklessly" intensified the family's distress. *Est. of Trentadue ex rel. Aguilar v. United States,* 397 F.3d 840, 856–858 (10th Cir. 2005). There the conduct included a nondisclosure of the unusual circumstances of the death, obstruction of an autopsy, and the failure to tell the family of the body's battered condition. *Id.* at 857-58. The conduct pled against Willbanks involves no such aggravating circumstances. Plaintiffs' claims for intentional infliction of emotional distress must be dismissed.

**Proposition III: Count VIII fails to state a claim for Oklahoma civil conspiracy**

The elements of civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Shoemaker Corp. III, Inc. v. Garrett*,

704 F. Supp. 3d 1222, 1259 (N.D. Okla. 2023); *see Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶ 46, 188 P.3d 158, 175. The agreement must be inferable from facts showing "that the parties united to accomplish" an unlawful scheme. *N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank*, 222 F.3d 800, 815 (10th Cir. 2000). There "can be no civil conspiracy where the act complained of and the means employed are lawful." *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294; *accord Cmty. Resourcing Inc. v. Berkshire Hathaway Specialty Ins.*, 2026 OK 53, 593 P.3d 115.

Plaintiffs Complaint fails to state a claim for conspiracy. First, the only acts pled against Willbanks are lawful acts, done within the scope of Willbanks' employment. Second, Plaintiffs have alleged no facts to show a meeting of the minds between Willbanks and any other defendant. The Complaint merely alleges that a group "acted in concert to obscure the timing and circumstances of death" [Doc. 1-2 at ¶50] and that Willbanks, with five others "advanced post-death concealment." *Id.* at ¶75. These are conclusions, not facts. "In order to establish a conspiracy evidence must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy." *Nissen v. Andres,* 1936 OK 612, ¶ 14, 63 P.2d 47, 51. Third, civil conspiracy is not an independent tort and does not itself create liability. *Cmty. Resourcing Inc. v. Berkshire Hathaway Specialty Ins.,* 2026 OK 53, ¶ 16, 593 P.3d 115, 120. As Plaintiffs' claims against Willbanks fail under both the GTCA and the merits, the derivative conspiracy claim falls with them. *Id.*

Furthermore, Count VIII is untimely. Actions "based upon facts that occurred while the person was an inmate in the custody of the State "shall be commenced within one (1) year after the cause of action shall have accrued." 12 O.S. § 95(A)(11). The events underlying the alleged conspiracy occurred in September 2024, but civil conspiracy was first asserted in 2026, well outside the one-year period. [Doc. 1-2 at ¶¶32, 74-76]. The same one-year bar defeats any conspiracy predicated on underlying intentional torts, such as false imprisonment or battery, that accrued on September 12, 2024. 12 O.S. §95.

**CONCLUSION**

Defendant Dustin Eugene Willbanks respectfully requests that the Court dismiss all claims against him. Counts IV, VI, and VIII should be dismissed as Willbanks is immune from liability under the GTCA and for failure to state a claim.

Respectfully submitted,

*s/Lauren Ray*
**LAUREN RAY, OBA #22694**
**LEXIE P. NORWOOD, OBA #31414**
Assistant Attorneys General
Oklahoma Office of Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: lauren.ray @oag.ok.gov
lexie.norwood@oag.ok.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are registered participants.

*s/Lauren Ray*
Lauren Ray