**CASE NO. 26-cv-2519-J**

---

**UNITED STATE DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

---

Rachel Macon, as Administrator and Personal representative of the Estate
Of Marquiel D. Ross, Deceased; and Danielle Ross, individually,

*Plaintiffs,*

v.

State of Oklahoma *ex rel.* Oklahoma Department of Corrections;
Kameron Christopher Harvanek; Brittany Ann Chastang; Destine Hayes;
Jacob Killion; Bradley Mooney; Tommy Lee Stranahan; Kimberly Renee Hall;
Ashley L. Bills; Justin Russell Jordan; Dustin Carl Henry; Dustin Eugene Willbanks;
Nanci Sue Battles; and John and Jane Does 1-10, all individual Defendants
sued in their individual capacities.

*Defendants.*

---

**DEFENDANT DESTINE HAYES' MOTION TO DISMISS**

---

**LAUREN J. RAY, OBA#22694**
**LEXIE P. NORWOOD, OBA #31414**
Assistant Attorney General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-4798
Facsimile: (405) 521-4518
lauren.ray@oag.ok.gov
lexie.norwood@oag.ok.gov
*Attorneys for Defendant*

November 16, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

DEFENDANT DESTINE HAYES' MOTION TO DISMISS ........ 1

INTRODUCTION ........ 1

STATEMENT OF THE CASE ........ 2

STANDARD OF REVIEW ........ 3

ARGUMENT AND AUTHORITIES ........ 4

Proposition I: The Complaint's undifferentiated group pleading fails Rule 8 and *Iqbal* and independently defeats the § 1983 counts against Hayes. ........ 4

Proposition II: Count I fails to state an Eighth Amendment claim, and Hayes is entitled to qualified immunity ........ 5

A. Failure to protect. ........ 6
B. Failure to intervene. ........ 7
C. Deliberate indifference to an obvious medical emergency. ........ 8
D. Qualified immunity ........ 10

Proposition III: Count III fails to state a § 1983 conspiracy, and Hayes is entitled to qualified immunity ........ 12

Proposition IV: The Oklahoma Governmental Tort Claims Act bars the state-law claims against Hayes......14

Proposition V: Plaintiff has failed to state a claim for wrongful death against Hayes......16

Proposition VI: Count VI fails to state a claim for intentional infliction of emotional distress. ......17

Proposition VII: Count VIII fails to state a claim for Oklahoma civil conspiracy......20

CONCLUSION ......21

CERTIFICATE OF SERVICE......22

## TABLE OF AUTHORITIES


Page(s)

*Anderson v. Branen*,
17 F.3d 552 (2d Cir. 1994) .......... 7

*Anderson v. Creighton*,
483 U.S. 635 (1987) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 4, 6, 7

*Barrios v. Haskell*,
2018 OK 90 .......... 15

*Basso v. Utah Power & Light Co.*,
495 F.2d 906 (10th Cir. 1974) .......... 4

*Beers v. Ballard*,
248 F. App'x 988 (10th Cir. 2007) .......... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 16

*Bledsoe v. Carreno*,
53 F.4th 589 (10th Cir. 2022) .......... 16

*Breeden v. League Servs. Corp.*,
1978 OK 27, 575 P.2d 1374 .......... 18

*Brock v. Thompson*,
1997 OK 127, 948 P.2d 279 .......... 20

*Brooks v. Gaenzle*,
614 F.3d 1213 (10th Cir. 2010) .......... 12, 13

*Carswell v. Okla. State Univ.*,
1999 OK 102, 995 P.2d 1118 .......... 15

*Cmty. Resourcing Inc. v. Berkshire Hathaway Specialty Ins.*,
2026 OK 53, 593 P.3d 115 .......... 20

*Computer Publ'ns, Inc. v. Welton*,
2002 OK 50, 49 P.3d 732 .......... 17

*Craig v. Eberly*,
164 F.3d 490 (10th Cir. 1998) ....................9

*Durre v. Dempsey*,
869 F.2d 543 (10th Cir. 1989) .................... 13

*Eddy v. Brown*,
1986 OK 3, 715 P.2d 74.................... 18

*Est. of Janota v. Love Cnty. Bd. of Comm'rs*,
830 F. Supp. 3d 1133 (E.D. Okla. 2026) ....................5

*Est. of Trentadue ex rel. Aguilar v. United States*,
397 F.3d 840 (10th Cir. 2005) ....................18, 19

*Evans v. Cameron*,
442 F.App'x 704 (3d Cir. 2011)....................8

*Farmer v. Brennan*,
511 U.S. 825 (1994).................... 6, 9

*Frasier v. Evans*,
992 F.3d 1003 (10th Cir. 2021) ....................12, 13

*Fuller v. Odom*,
741 P.2d 449 (Okla. 1987) .................... 14

*Fuqua v. Santa Fe Cnty. Sheriff's Off.*,
157 F.4th 1288 (10th Cir. 2025).................... 4, 10

*Grider v. City of Auburn*,
618 F.3d 1240 (11th Cir. 2010) .................... 13

*Groundhog v. Keeler*,
442 F.2d 674 (10th Cir. 1971) ....................4

*Gruenwald v. Maddox*,
274 F. App'x 667 (10th Cir. 2008) .................... 7, 8

*Hall v. Bellmon*,
935 F.2d 1106 (10th Cir. 1991) ....................8

*Hannula v. City of Lakewood*,
907 F.2d 129 (10th Cir. 1990) .................... 11

*Hardy v. Rabie*,
147 F.4th 1156 (10th Cir. 2025) .......... 9

*Harper v. Albert*,
400 F.3d 1052 (7th Cir. 2005) .......... 7

*Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*,
962 F.3d 1204 (10th Cir. 2020) .......... 13, 14

*Hooks v. Bethany Police Dep't*,
2018 WL 11266782 (W.D. Okla. Mar. 19, 2018) .......... 8

*Hudson v. Palmer*,
468 U.S. 517 (1984) .......... 6

*Hunt v. Bennett*,
17 F.3d 1263 (10th Cir. 1994) .......... 12

*Hunter v. Bryant*,
502 U.S. 224 (1991) .......... 10

*Ishmael v. Andrew*,
2006 OK CIV APP 82, 137 P.3d 1271 .......... 18

*Jones v. Norton*,
809 F.3d 564 (10th Cir. 2015) .......... 7

*Kansas Penn Gaming, LLC v. Collins*,
656 F.3d 1210 (10th Cir. 2011) .......... 5

*Malley v. Briggs*,
475 U.S. 335 (1986) .......... 12

*Martin v. Johnson*,
1998 OK 127, 975 P.2d 889 .......... 15

*Medina v. City and County of Denver*,
960 F.2d 1493 (10th Cir. 1992) .......... 11

*Medina v. State*,
1993 OK 121, 871 P.2d 1379 .......... 15

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .......... 11

*Morris v. Noe*,
672 F.3d 1185 (10th Cir. 2012) .......... 11

*N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank*,
222 F.3d 800 (10th Cir. 2000) .......... 20

*Ouellette v. State Farm Mut. Auto. Ins. Co.*,
1994 OK 79, 8 918 P.2d 1363 .......... 17

*Oxendine v Kaplan*,
241 F.3d 1272 (10th Cir. 2001) .......... 9

*Pahls v. Thomas*,
718 F.3d 1210 (10th Cir. 2013) .......... 4, 5, 6

*Pearson v. Callahan*,
555 U.S. 223 (2009) .......... 11

*Pellegrino v. State ex rel. Cameron Univ.*,
2003 OK 2, 63 P.3d 535 .......... 15

*Port City Props. v. Union Pac. R.R.*,
518 F.3d 1186 (10th Cir. 2008) .......... 4

*Quintana v. Santa Fe Cnty. Bd. of Commissioners*,
973 F.3d 1022 (10th Cir. 2020) .......... 6

*Riley v. Brown & Root, Inc.*,
1992 OK 114, 836 P.2d 1298 .......... 17

*Rios v. Nicor Drilling Co.*,
1983 OK 74, 665 P.2d 1183 .......... 16

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) .......... 5

*Rooks v. State ex rel. Okla. Corp. Comm'n*,
1992 OK CIV APP 155, 842 P.2d 773 .......... 14

*Roska ex rel. Roska v. Peterson*,
328 F.3d 1230 (10th Cir. 2003) .......... 11

*Rowell v. Bd. of Cnty. Commissioners of Muskogee Cnty.*,
2021 OK CIV APP 7, 485 P.3d 879 .......... 15

*Salehpoor v. Shahinpoor*,
358 F.3d 782 (10th. Cir. 2004) ..................... 12

*Schneider v. City of Grand Junction Police Dep't*,
717 F.3d 760 (10th Cir. 2013) ..................... 6

*Schovanec v. Archdiocese of,*
*Okla. City*, 2008 OK 70, 188 P.3d 158 ..................... 20

*Sealock v. Colorado*,
218 F.3d 1205 (10th Cir. 2000) ..................... 8, 9

*Shoemaker Corp. III, Inc. v. Garrett*,
704 F. Supp. 3d 1222 (N.D. Okla. 2023) ..................... 20

*Smith v. United States*,
561 F.3d 1090 (10th Cir. 2009) ..................... 4

*Snell v. Tunnell*,
920 F.2d 673 (10th Cir. 1990) ..................... 13

*Sooner Prods. Co. v. McBride*,
708 F.2d 510 (10th Cir. 1983) ..................... 12, 13

*Tonkovich v. Kan. Bd. of Regents*,
159 F.3d 504 (10th Cir. 1998) ..................... 12

*Verdecia v. Adams*,
327 F.3d 1171 (10th Cir. 2003) ..................... 7, 10

*Vondrak v. City of Las Cruces*,
535 F.3d 1198 (10th Cir. 2008) ..................... 7

*Warren v. U.S. Specialty Sports Ass'n*,
138 P.3d 580 (Okla. Civ. App. 2006) ..................... 17

**Statutes**

42 U.S.C. § 1983 ..................... Passim

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..........................................................................................4

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ..................................................................1

## DEFENDANT DESTINE HAYES' MOTION TO DISMISS

Defendant Destine Hayes, in her individual capacity, respectfully moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims asserted against her in Plaintiffs' Complaint. The Complaint asserts three federal counts under 42 U.S.C. § 1983 (Counts I and III) and four Oklahoma-law counts (Counts IV, V, VI, and VIII) against Hayes. Each claim fails as a matter of law. In support of this motion, Hayes states as follows.

## INTRODUCTION

This action arises from the death of Marquiel Ross, an inmate killed by his cellmate at the Oklahoma State Penitentiary ("OSP") on September 12, 2024. Plaintiffs filed this action alleging federal and state claims against twelve individuals and ten unidentified Does by sorting them into five functional groups and alleging, largely on information and belief, what those groups collectively did. Hayes, a correctional officer, is not alleged to have had any contact with Ross before his death. Stripped of the group labels and conclusory characterizations, the Complaint alleges only this about Hayes: after Chastang reported Ross's statement that he believed his cellmate was dead, Hayes radioed a supervisor; Hayes reached Ross's cell at about 2:12 pm; Hayes first told Harris to have Ross come speak, and when Harris said Ross "was dead when [he] woke up", Hayes called medical; additional staff arrived at 2:13 pm; Hayes then strip searched and secured Harris and, with Defendant Killion, moved Harris to a law cage. [Doc. 1-2 at ¶¶ 32-33, 41]. The Complaint's remaining allegations against Hayes simply recast the one-minute exchange with Harris, alleging Hayes "initially rejected the death report" or "failed to treat the death report as an emergency." *Id.* at ¶¶49, 54. These allegations are the types of conclusory, vicarious-liability allegations *Iqbal* forbids. These allegations do not

plausibly allege that Hayes knew of and disregarded a substantial risk to Ross, much less that she agreed to violate Ross's rights, or that Hayes's conduct was extreme and outrageous. Hayes is entitled to qualified immunity on the federal counts and to dismissal of every count against her.

## STATEMENT OF THE CASE

Marquiel Ross was received into the custody of the Oklahoma Department of Corrections ("ODOC") on March 29, 2023, to serve a two-year sentence[1], and remained in custody until his death on September 12, 2024. While housed at OSP, Ross was celled with Justin Harris, beginning on September 11, 2024. [Doc. 1-2, p. 30]. On September 12, 2024, Ross was found unresponsive in his cell and died. *Id.* at ¶35. Harris has since been charged with first-degree murder as a result of Ross's death.

Plaintiffs first sued ODOC and others in Oklahoma County on April 7, 2025. Defendants removed the case to the Western District of Oklahoma, Case No. CIV-25-472-CMS. On June 11, 2025, the Court dismissed ODOC because the Eleventh Amendment barred federal damages relief and ODOC is not a "person" under § 1983. The twelve individual defendants, including Hayes, were added by amendment but never served, and on March 12, 2026, the Court dismissed them without prejudice under Rule 4(m) for nonservice. Plaintiffs then filed the present Complaint on August 6, 2026, again naming Hayes in his individual capacity.

The individualized factual allegations concerning Hayes are these:

1. Hayes was notified by Chastang that Harris believed his cell mate was dead sometime after 2:08 pm. [Doc. 1-2 at ¶32]

2. Hayes arrived to the cell at 2:12 pm. *Id.* at ¶33

3. Hayes told Harris to have Ross come speak. Harris responded that Ross was "dead when [he] woke up." At that point, Hayes called medical. At 2:13 pm additional ODOC personnel arrived on scene. *Id.* at ¶33.

4. Hayes strip-searched and secured Harris, along with Defendant Killion moved him from the shower to the law cage at 2:26 pm. *Id.* at ¶41.

The remaining allegations against Hayes are group labels. Hayes is grouped into the "emergency response" group. *Id.* at ¶10. On these facts, Plaintiffs assert the following claims against Hayes: Count I (§ 1983 Eighth Amendment failure to protect, deliberate indifference to an obvious emergency, and failure to intervene); Count III (§ 1983 civil conspiracy); Count IV (Oklahoma negligence and gross negligence); Count V (wrongful death and survival); Count VI (intentional infliction of emotional distress); Count VI (wrongful death) and Count VIII (Oklahoma civil conspiracy).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But "the tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction of the subject matter." A Rule 12(b)(1) motion "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1189 (10th Cir. 2008) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

Qualified immunity may be, and should be, resolved on a motion to dismiss. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288 (10th Cir. 2025). To overcome it, a plaintiff must allege facts sufficient to show, which if true are sufficient to show that the defendant plausibly violated a constitutional right and that the right was clearly established at the time. *Id.*

## ARGUMENT AND AUTHORITIES

### Proposition I: The Complaint's undifferentiated group pleading fails Rule 8 and *Iqbal* and independently defeats the § 1983 counts against Hayes.

Section 1983 is a vehicle for imposing personal liability on government officials, and the Tenth Circuit demands "careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). "[I]t is particularly important" that a complaint "make clear exactly who is alleged to have done what to whom," so as to provide each individual defendant fair notice of the claims against that defendant, "as distinguished from collective allegations." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). A plaintiff's "undifferentiated contention that 'defendants' infringed his rights" will not

suffice; the plaintiff "must identify specific actions taken by particular defendants." *Pahls*, 718 F.3d at 1225-26. Failure to do so both dooms the § 1983 claims and entitles the defendants to qualified immunity. *Id.* at 1225.

The Complaint does exactly what *Robbins* forbids. It assigns twelve individuals and ten Does to five functional groups and then pleads group conduct; that the "Cell-Assignment and Observation Defendants" made the decision to house Ross and Harris together, that the "Emergency-Response Defendants" staged a response, and so on. Where defendants' alleged acts "are entirely different in character," lumping them into a single collective allegation "makes it impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250. The Complaint compounds the defect by pleading the load-bearing allegations of knowledge and agreement "on information and belief." Such conclusory allegations "are not entitled to the presumption of truth." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). A recent Oklahoma federal decision dismissed materially identical pleading (counts referring only to a defined defendant group and to "Defendants" collectively) as failing on its face under Rule 8(a). *Est. of Janota v. Love Cnty. Bd. of Comm'rs*, 830 F. Supp. 3d 1133 (E.D. Okla. 2026). The same result follows here as to Hayes.

**Proposition II: Count I fails to state an Eighth Amendment claim, and Hayes is entitled to qualified immunity.**

Count I alleges Hayes and others failed to protect, failed to intervene and demonstrated deliberate indifference to an obvious medical emergency. "[I]n its prohibition of 'cruel and unusual punishments' the Eighth Amendment places restraints on prison officials, who . . . must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511

U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). But "not every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability" of prison employees. *Id.* Liability requires both an objectively substantial risk of serious harm and a subjectively culpable state of mind (deliberate indifference). *Id.* at 834. Section 1983 liability must "be predicated on a violation traceable to a defendant's 'own individual actions.'" *Pahls*, 718 F.3d at 1225, quoting *Iqbal,* 556 U.S. at 676. The court will not impute one officer's knowledge onto another. See *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1030 (10th Cir. 2020), finding that since the complaint limited the allegations to one officer, "we see no reason to export allegations of this knowledge onto the other individual defendants."

**A. Failure to protect.**

To state a failure-to-protect claim, Plaintiffs must plead (1) an objectively serious harm, (2) a culpable state of mind, and (3) an "affirmative link" between the official's conduct and the constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The subjective component requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. And the "affirmative link" requirement means liability must "be predicated on a violation traceable to a defendant-official's own individual actions." *Pahls*, 718 F.3d at 1225 (quoting *Iqbal*, 556 U.S. at 676).

This Complaint does not allege that Hayes personally caused Ross harm, that she had any knowledge of any danger to Ross, or that she had any role in his transfer to OSP or his cell placement. There is no indication Hayes had any involvement with Ross prior to the attack

by Harris; Hayes only arrived onsite after the attack at 2:12 pm. [Doc. 1-2 at ¶33]. The Tenth Circuit applied *Farmer* to a cellmate-assault claim in *Verdecia v. Adams*, 327 F.3d 1171 (10th Cir. 2003), holding that a plaintiff must present evidence the officials "actually knew about a substantial risk of serious harm," and "simple, or even heightened, negligence" in assessing risk is not deliberate indifference. Because the Complaint pleads no facts showing that Hayes was deliberately indifferent to Ross's safety, and no affirmative link between Hayes's conduct and the assault, the failure-to-protect claim fails.

**B. Failure to intervene.**

An officer's failure to intervene may support an Eighth Amendment claim only where the officer was present at the scene, watched the incident and did nothing to prevent it. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008), finding "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Quoting *Anderson v. Branen* 17 F.3d 552, 557 (2d Cir. 1994), *see also Gruenwald v. Maddox*, 274 F. App'x 667, 674 (10th Cir. 2008) (unpublished). "[I]n order for there to be failure to intervene, it logically follows that there must exist an underlying constitutional violation[.]" *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015), quoting *Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005). When the complaint fails to allege that an officer witnessed the event, "the simple conclusory allegation that [the officer failed to intervene-when not once does [the plaintiff] allege that [the officer] witnessed any of the events in question-is insufficient to state a claim." *Gruenwald, 274 App.x at 674,* see also *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (finding "conclusory allegations without supporting factual averments are insufficient to state a claim."). Other courts agree that failure to intervene

requires that the officer "had a reasonable opportunity to intervene and simply refused to do so." *Evans v. Cameron*, 442 F.App'x 704, 707 (3d Cir. 2011).

There is no allegation that Hayes witnessed any assault on Ross and then refused to intervene. On the contrary, by the time Hayes arrived on scene, the attack had already occurred. The Complaint "does not set forth any factual allegations that would reasonably support an inference that [Hayes] was aware [Ross] faced any risk of harm at the hands of other inmates or was present when the assault occurred." *Hooks v. Bethany Police Dep't,* 2018 WL 11266782, at 8 (W.D. Okla. Mar. 19, 2018), *report and recommendation adopted*, 2018 WL 11266754 (W.D. Okla. Apr. 16, 2018). Thus, Plaintiffs claim for failure to intervene fails.

**C. Deliberate indifference to an obvious medical emergency.**

Plaintiff alleges Hayes was deliberately indifferent to Ross's serious medical need. This theory fails on both the objective and subjective prongs. On the objective prong, delayed "medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir. 2000). Here, Hayes arrived to Ross's cell and requested his cellmate have Ross come speak. [Doc. 1-2 at ¶33]. The Complaint alleges at most a single exchange of words between Hayes and Harris when Hayes arrived to Ross's cell at about 2:12 pm and the arrival of responding staff less than a minute later at about 2:13 pm. *Id.* There are no facts showing a delay in care.

Plaintiff's claims also fail because the Complaint's own allegations establish there was no live, treatable medical need. By the time Hayes arrived on scene, Ross was "unresponsive, cold, stiff, and pulseless" and the AED "detected no rhythm." [Doc. 1-2 at ¶35]. Delayed "medical care only constitutes an Eighth Amendment violation where the plaintiff can show

the delay resulted in substantial harm." *Sealock v Colorado,* 218 F.3d 1205, 1210 (10th Cir. 2000). "[T]here is no [allegation] here that [Ross] suffered additional pain or that the [Hayes's] untimely response precluded possible life-saving treatment." *Beers v. Ballard,* 248 F. App'x 988, 991 (10th Cir. 2007) (unpublished). The objective prong fails, as the Complaint pleads no facts suggesting that any response by Hayes could have spared Ross additional pain or preserved a realistic chance of life-saving treatment.

The subjective prong fails for the same reason it fails on the failure-to-protect theory: there are no allegations that Hayes knew of and consciously disregarded a substantial risk of harm to Ross. *Farmer*, 511 U.S. at 837. It is not enough that Hayes "should have known" of a risk; Plaintiff must plead that she "actually knew about a substantial risk of serious harm." *Oxendine v Kaplan*, 241 F.3d 1272, 1277 (10th Cir. 2001); see *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). "A jail official exhibits deliberate indifference if 'he 'knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that role due to deliberate indifference.'" *Hardy v. Rabie*, 147 F.4th 1156, 1166 (10th Cir. 2025), quoting *Sealock,* 218 F.3d at 1211.

Plaintiff's Complaint makes clear that Hayes did not delay or refuse to allow medical treatment to Ross. Hayes arrived at Ross's cell at 2:12. [Doc. 1-2 at ¶33]. Hayes requested Harris have Ross speak. *Id.* When Harris stated Ross was dead, Hayes called medical. *Id.* Additional ODOC personnel arrived at 2:13 pm. *Id.* An automated external defibrillator was placed on Ross and detected no rhythm. *Id.* at ¶35. Multiple rounds of CPR by ODOC personnel were performed. *Id.* Ross was transported by ODOC personnel to the institutional

emergency room, where he arrived by 2:28pm. *Id.* At no point did Hayes delay or refuse medical treatment to Ross. Asking Hayes to rouse his cellmate in the moment prior to calling medical is, at most, an attempt to verify an unconfirmed report. Once Hayes confirmed the emergency, she radioed medical. Contacting medical after verifying an emergency is not a gatekeeper who delays or refuses to fulfill that gatekeeper role due to deliberate indifference.

The Complaint tries to get around the facts by alleging Hayes "initially rejected the death report," "failed to treat the death report as an emergency," and "disregarded an obvious emergency." *Id.* at ¶¶37, 49, 54. Not only are these claims conclusory, and therefore are not permitted under *Twombly* and *Iqbal*, they are directly contradicted by the Complaint itself, as once Hayes arrived on scene and confirmed an emergency, she contacted medical.

The allegations are clear that Hayes did not consciously disregard a substantial risk of harm to Ross. As such, Hayes is entitled to qualified immunity on the deliberate indifference claim in Count I. *Fuqua*, 157 F.4th 1288; *Verdecia*, 327 F.3d 1171.

**D. Qualified immunity**

A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that in light of pre-existing law the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). Such immunity is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir. 1990).

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1193 (10th Cir. 2012). The court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248 (citations and quotations omitted). Thus, if the plaintiff has alleged a constitutional violation and has met his burden to establish that the law on the subject is clearly established, the plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law.

In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986) (emphasis added). Where

"officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id.* at 341.

Plaintiffs cannot meet their burden of demonstrating that Hayes violated Ross's constitutional rights. There is no Supreme Court or Tenth Circuit decision that holds an officer who responds to a cellmate's report, asks the cellmate to have his roommate come speak, and then summons medical staff who arrive within a minute violates the Eighth Amendment. Hayes is entitled to qualified immunity.

**Proposition III: Count III fails to state a § 1983 conspiracy, and Hayes is entitled to qualified immunity.**

A § 1983 conspiracy requires "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010)). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Instead, a "plaintiff must allege specific facts showing an agreement and concerted action among the defendants." *Frasier*, 992 F.3d at 1024 (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)). "Parallel action — or inaction — does not necessarily indicate an agreement to act in concert." *Brooks v. Gaenzle,*, 614 F.3d 1213,1228 (10th Cir. 2010), quoting *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th. Cir. 2004); *see also Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983). And a valid claim requires "not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the

other will be insufficient." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (quoting *Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990)).

Plaintiffs plead no facts showing any agreement between Hayes and any other defendant. They simply allege the supposed agreement based on conclusory allegations. Plaintiffs allege the agreement may be "inferred" from alleged "coordinated acts and communications." [Doc. 1-2 at ¶59]. Plaintiffs' failure to allege any coordinated acts or communications by Hayes is precisely the inference-from-parallel-conduct pleading the Tenth Circuit prohibits. *Brooks*, 614 F.3d at 1228. In fact, "because plaintiff failed to allege specific facts showing agreement and concerted action among defendants," dismissal of the conspiracy claim is proper. *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989), *see also Sooner Prods. Co. v. McBride,* 708 F.2d 510, 512 (10th Cir. 1983).

Moreover, the object of any agreement must be unlawful; "proof that defendants formed an agreement or conspired to engage in lawful activities . . . would be inadequate to support a § 1983 conspiracy claim." *Frasier*, 992 F.3d at 1025; *see Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). The Complaint alleges only that Hayes responded to Chastang's call and arrived at Ross's cell at 2:12 pm. [Doc. 1-2 at ¶33]. Upon arrival, Hayes asked Harris to have Ross come speak. *Id.* Harris then stated Ross was dead. *Id.* Hayes then contacted medical, and additional ODOC staff arrived on scene by 2:13pm. *Id.* Hayes then strip-searched and secured Harris and later moved him from the shower to the law cage. [Doc. 1-2 at ¶41]. Securing an inmate suspected of killing his cellmate is an ordinary and necessary correctional task, not a step in a cover up. At most, Hayes "conspired" to do her job. Finally, because Count I states no underlying constitutional deprivation as to Hayes, the derivative

conspiracy count independently fails. *See Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1231 (10th Cir. 2020) (finding because the plaintiff had failed to show a false arrest, the conspiracy claim was properly dismissed). Hayes is entitled to qualified immunity on Plaintiffs' 1983 conspiracy claim.

**Proposition IV: The Oklahoma Governmental Tort Claims Act bars the state-law claims against Hayes.**

Hayes is an ODOC employee, and the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 *et seq*., forecloses individual tort liability for acts within the scope of her employment. Before the GTCA, the State and its agencies enjoyed common-law sovereign immunity. The GTCA "adopts the doctrine of sovereign immunity" and provides that the State and its employees acting within the scope of employment "shall be immune from liability for torts," waiving immunity only to the extent provided in the Act. 51 O.S. § 152.1(A)-(B). There is a presumption of immunity for state employees. *Rooks v. State ex rel. Okla. Corp. Comm'n*, 1992 OK CIV APP 155, ¶¶ 6, 10, 842 P.2d 773, 777. The GTCA is the exclusive remedy for the torts of governmental employees. *Fuller v. Odom*, 741 P.2d 449, 452 (Okla. 1987); 51 O.S. § 153(B). Scope of employment means "performance by an employee acting in good faith within the duties of the employee's office or employment." 51 O.S. § 152(13).

Critically, "[i]n no instance . . . shall an employee of the state . . . acting within the scope of employment be named as a defendant." 51 O.S. § 153(C). Plaintiffs' own allegations establish that Hayes acted within the scope of her employment at all relevant times: she responded to the cell at about 2:12 pm; she requested Harris have Ross come speak; she radioed for medical; and thereafter secured and searched Harris. [Doc. 1-2 at ¶¶ 33, 41]. There are no facts showing she acted in bad faith, nor any non-conclusory allegation that she acted

in bad faith. *See Carswell v. Okla. State Univ.*, 1999 OK 102, ¶ 4, 995 P.2d 1118, 1120 (dismissing employees where the plaintiff offered no factual grounds that they acted maliciously or in bad faith). A "government employee acting within the scope of employment is relieved from private liability for tortious conduct." *Martin v. Johnson*, 1998 OK 127, ¶ 28, 975 P.2d 889, 895; *accord Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶ 4, 63 P.3d 535, 537.

Any remedy for within-scope conduct lies against the State, which is itself exempt from liability for "[p]rovision, equipping, operation or maintenance of any prison" and for "injuries by a prisoner to any other prisoner." 51 O.S. § 155(25); *Medina v. State*, 1993 OK 121, 871 P.2d 1379; *Barrios v. Haskell*, 2018 OK 90. This expressly includes the "security of the facility" and "any other services provided for inmates." *Medina* at 1384, n. 13. In fact, "the [Oklahoma] Supreme Court's broad reading of this exception makes it impossible to imagine any act of a prison's employee, done within the scope of employment, that is not also in furtherance of the operation of a prison." *Rowell v. Bd. of Cnty. Commissioners of Muskogee Cnty.,* 2021 OK CIV APP 7, ¶19, 485 P.3d 879, 883. The Complaint makes it clear that any action by Hayes was done in the furtherance of the operation of the prison, namely responding to Chastang's call, then notifying medical and thereafter searching and securing Harris.

Plaintiff attempts to get around the GTCA exemption by alleging, without support, that Hayes acted "willfully, maliciously, corruptly, [or] in bad faith" and for "concealment-related purposes." [Doc. 1-2 at ¶64]. Plaintiffs also allege, without support, that those with custody of Harris "knowingly failed to preserve or document" evince or "used the resulting gaps to obscure" the circumstances of Ross's death. *Id.* at ¶41. However, such unsupported conclusory allegations are impermissible. "In considering whether the complaint's allegations are

sufficient, the court first eliminate conclusory allegations, mere 'labels and conclusion,' and any 'formulaic recitation of the elements of a cause of action." *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022), quoting *Twombly*, 550 U.S. at 555.

When the conclusory allegations are eliminated, the facts make it clear that at all times Hayes was acting within the scope of her employment in the furtherance of the operations of a prison. Responding to a call from a fellow correctional officer, confirming an emergency, radioing for medical, and thereafter searching and securing an inmate suspected of murder are quintessential correctional-officer duties. Hayes's good-faith performance of lawfully assigned tasks is the definition of acting within the scope of employment. That within-scope conduct cannot support Count IV (negligence and gross negligence), Count V (wrongful death and survival), Count VI (intentional infliction of emotional distress) or Count VIII (civil conspiracy) against her individually.

**Proposition V: Plaintiff has failed to state a claim for wrongful death against Hayes**

In count V, Plaintiffs bring a wrongful death claim against Hayes under 12 O.S. §§1051 and 1053. Section 1053 (A) permits the personal representative to maintain an action "[w]hen the death of one is caused by the wrongful act or omission of another…if the former might have maintained an action, had he or she lived, against the latter…for an injury for the same act or omission. Section 1051 preserves the decedent's personal injury claim 'notwithstanding the death of the person entitled or liable." The claim "is derivative and is dependent upon the continuance of the right in the decedent at the time of his death." *Rios v. Nicor Drilling Co.*, 1983 OK 74, ¶ 7, 665 P.2d 1183, 1186. Both the death and survival actions "lie only if a the time of his/her death the dependent had a right of recovery for the injury in suit." *Oullette v.*

*State Farm Mut. Auto. Ins. Co.,* 1994 OK 79, 8 918 P.2d 1363, 1366. Wrongful death "is not a separate and distinct tort, but is an action which derives from the rights of the decedent." *Riley v. Brown & Root, Inc.,* 1992 OK 114, ¶ 10, 836 P.2d 1298, 1300-01, opinion corrected (Aug. 4, 1992). As there is no viable underlying tort against Hayes by Ross, Plaintiff's claim fails.

As described in detail above, at all times Hayes was acting within the scope of employment and therefore cannot be liable under the GTCA. Furthermore, independent of the GTCA, the wrongful death claim requires conduct that caused the death. See *Riley*, 1992 OK at ¶ 11, 836 P.2d at 1301, finding wrongful death "protects the right of action for wrongful death." The Complaint is clear that Ross' death was due to the assault by his cellmate, along with the alleged failures in his transfer, cell assignment, and observation. [Doc. 1-2 at ¶¶33, 47, 53-55] Hayes played no role in any of these events. Hayes's first interaction with Ross was after Ross's body was discovered in his cell. Thus, Plaintiffs' claims for wrongful death must be dismissed.

**Proposition VI: Count VI fails to state a claim for intentional infliction of emotional distress.**

To state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. The trial court acts as a "gatekeeper" and must first determine whether the defendant's conduct "may reasonably be regarded as sufficiently extreme and outrageous" to permit recovery. *Warren v. U.S. Specialty Sports Ass'n*, 138 P.3d 580, 585 (Okla. Civ. App. 2006). Liability attaches only where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Breeden v. League Servs. Corp.*, 1978 OK 27, ¶ 12, 575 P.2d 1374, 1376. Whether conduct is extreme and outrageous "must be considered in the setting in which the conduct occurred." *Est. of Trentadue ex rel. Aguilar v. United States,* 397 F.3d 840, 856–858 (10th Cir. 2005)). Conduct "which, though unreasonable, is neither 'beyond all bounds of decency' in the setting in which it occurred, nor is one that can be 'regarded as utterly intolerable in a civilized community,' falls short of having actionable quality." *Eddy v. Brown,* 1986 OK 3, ¶ 7, 715 P.2d 74, 77.

Nothing alleged about Hayes meets the threshold for extreme and outrageous behavior. The only individualized conduct the Complaint attributes to Hayes is that Hayes responded to the cell, called a supervisor and medical, and strip-searched, secured, and moved Harris. *Id.* at ¶¶ 33, 41

Conduct undertaken in the course of ones job duties is not outrageous, atrocious, or beyond all possible bounds of decency as a matter of law. *Ishmael v. Andrew*, 2006 OK CIV APP 82, 20, 137 P.3d 1271, 1277 (finding "in the context of a workplace investigation" falsely accusing an employee of contaminating a drink was not extreme and outrageous). Hayes's alleged conduct was in the scope of her job duties and would not cause "an average member of the community" to "exclaim, 'Outrageous!'" *Breeden,* 1978 OK 27 at 8, 575 P.2d at 1376, quoting Section 46, Restatement of Trots (Second) at comment d. Where "reasonable persons would not differ" that the conduct falls short of the beyond-all-bounds standard, dismissal at the gatekeeper stage is required. *Id.* at ¶12, 1377.

Plaintiff's Complaint also alleges a "post-death course" of concealment. [Doc. 1-2 68-69]. However, there are no facts that tie Hayes to any particular action regarding any

concealment. Instead, the Complaint lumps Hayes with the "Emergency response group" alleging these Defendants "participated in, directed, approved, or ratified" the concealment. [Doc. 1-2 at ¶¶10, 68-69]. Such group-based, conclusory claims are prohibited under *Ashcroft* and *Robbins*. The allegations exclude Hayes from the post-death actions of ODOC personnel. The alleged arrangement "to obscure the timing and circumstances of the death, antecedent failures, and remains handling" are attributed to other defendants. [Doc. 1-2 at ¶50]. In Count VIII, the Complaint alleges that Hayes "advanced response" while the other Defendants "advanced post-death concealment." *Id.* at ¶75. Furthermoe, Hayes's only alleged contact with Harris ended by about 2:26 pm, well before the 4:45 pm clothing change the Complaint attributes to others. *Id.* at ¶41.

Regardless, Plaintiffs' concealment argument falls short of extreme and outrageous conduct. The Tenth Circuit has only found conduct extreme and outrageous where the government shipped a federal inmate's battered, secretly autopsied body to an unsuspecting grieving family and concealed the circumstances of death. conduct that "needlessly and recklessly" intensified the family's distress. *Est. of Trentadue ex rel. Aguilar v. United States,* 397 F.3d 840, 856–858 (10th Cir. 2005). There the conduct included a nondisclosure of the unusual circumstances of the death, obstruction of an autopsy, and the failure to tell the family of the body's battered condition. *Id.* at 857-58. The conduct pled against Hayes involves no such aggravating circumstances. There is no allegations Hayes made any false statement to Plaintiffs, that she communicated with the medical examiner, or that she authorized or initiated the cremation. Plaintiff's claims for intentional infliction of emotional distress must be dismissed.

**Proposition VII: Count VIII fails to state a claim for Oklahoma civil conspiracy**

The elements of civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Shoemaker Corp. III, Inc. v. Garrett*, 704 F. Supp. 3d 1222, 1259 (N.D. Okla. 2023); *see Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶ 46, 188 P.3d 158, 175. The agreement must be inferable from facts showing "that the parties united to accomplish" an unlawful scheme. *N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank*, 222 F.3d 800, 815 (10th Cir. 2000). As shown in Proposition III, the Complaint alleges no agreement between Hayes and anyone; it only alleges that Hayes "advanced response." [Doc. 1-2 at ¶75]. Hayes is expressly omitted from any alleged post-death concealment arrangement. *Id.* at ¶¶50, 75. Civil conspiracy "is not an independent cause of action." There "can be no civil conspiracy where the act complained of and the means employed are lawful." *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294; *accord Cmty. Resourcing Inc. v. Berkshire Hathaway Specialty Ins.*, 2026 OK 53, 593 P.3d 115. Because the underlying tort and constitutional claims against Hayes fail, as Plaintiff fails to state an Eighth Amendment violation, and the Oklahoma tort theories are barred under the GTCA, the derivative conspiracy count fails as a matter of law.

Furthermore, Count VIII is untimely. Actions "based upon facts that occurred while the person was an inmate in the custody of the State "shall be commenced within one (1) year after the cause of action shall have accrued." 12 O.S. § 95(A)(11). The events underlying the alleged conspiracy occurred in September 2024, but civil conspiracy was first asserted in 2026, well outside the one-year period. [Doc. 1-2 at ¶¶32, 74-76]. The same one-year bar defeats any

conspiracy predicated on underlying intentional torts, such as false imprisonment or battery, that accrued on September 12, 2024. 12 O.S. §95. Plaintiffs claims must be dismissed.

## CONCLUSION

Defendant Destine Hayes respectfully requests that the Court dismiss all claims against her. The § 1983 counts (Counts I and III) should be dismissed on the merits and on qualified-immunity grounds; and because this is Plaintiffs' second attempt to assert these claims, the dismissal should be with prejudice. The Oklahoma-law counts (Counts IV, V, VI, and VIII) should be dismissed as Hayes is immune from liability under the GTCA and for failure to state a claim.

Respectfully submitted,

*s/Lauren Ray*
**LAUREN RAY, OBA #22694**
**LEXIE P. NORWOOD, OBA #31414**
Assistant Attorneys General
Oklahoma Office of Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: lauren.ray @oag.ok.gov
lexie.norwood@oag.ok.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are registered participants.

*s/Lauren Ray*
Lauren Ray