**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Rachel Macon, as Administrator and Personal representative of the Estate Of Marquiel D. Ross, Deceased; and Danielle Ross, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>1.State of Oklahoma *ex rel.* Oklahoma Department of Corrections;<br>2.Kameron Christopher Harvanek;<br>3.Brittany Ann Chastang;<br>4.Destine Hayes;<br>5.Jacob Killion;<br>6.Bradley Mooney;<br>7.Tommy Lee Stranahan;<br>8.Kimberly Renee Hall;<br>9.Ashley L. Bills;<br>10.Justin Russell Jordan;<br>11.Dustin Carl Henry;<br>12.Dustin Eugene Willbanks;<br>13.Nanci Sue Battles; and<br>14.John and Jane Does 1-10, all individual Defendants sued in their individual capacities.<br><br>Defendants. | ) | Case No. 26-CV-2519-J |

**DEFENDANT KAMERON CHRISTOPHER HARVANEK'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant Kameron Christopher Harvanek ("Harvanek"), in his individual capacity, and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), moves the Court to dismiss every claim asserted against him in Plaintiffs' Complaint. The Complaint names Harvanek in two federal counts under 42 U.S.C. § 1983 (Count II: prolonged detention and Count III: civil conspiracy) and three Oklahoma-law counts (Count IV: negligence and gross negligence; Count V:

wrongful death and survival; and Count VIII: civil conspiracy). Each claim against him fails as a matter of law. In support, Harvanek states as follows.

## STATEMENT OF THE CASE

This action arises from the death of Marquiel Ross, an inmate in the custody of the Oklahoma Department of Corrections ("ODOC"), who was assaulted at the Oklahoma State Penitentiary ("OSP") on September 12, 2024. [Doc. 1-2, ¶ 65]. Plaintiffs filed the Complaint in the District Court of Oklahoma County on August 6, 2026, and the case was removed to this Court. [Doc. 1, ¶¶ 1, 4]. The Complaint identifies Harvanek only as "Warden of the Howard McLeod Correctional Center ('HMCC')." [Doc. 1-2, ¶ 7]. Its factual allegations about him are limited to the following:

1. Around November 2023, "while Ross was being transported from HMCC toward the Lexington Assessment and Reception Center, officials diverted him to OSP." On information and belief, Harvanek "authorized, facilitated, recommended, or knowingly acquiesced in the diversion," and "failed to correct it after receiving placement and release information." *Id.* at ¶ 27.
2. ODOC records displayed conflicting projected or discharge dates of November 19, 2023, and July 8, 2024. *Id.* at ¶ 28.
3. Harvanek and the unnamed "Release-Record and Transfer Does" "knew of the conflicts but refused to verify or correct the underlying inputs." [*Id.* at ¶¶16, 57].
4. Harvanek and the unnamed Does acted in concert to confine Ross after his discharge date and divert him to OSP, with Harvanek "authorizing, facilitating,

recommending, or acquiescing in the diversion and failing to end confinement after notice." *Id.* at ¶ 47.

The Complaint groups Harvanek with unidentified Does as the "Release-Record and Transfer Defendants," a group defined to include anyone who "calculated, maintained, reviewed, or acted on Ross's release date, answered continued-confinement inquiries, or approved or effectuated his transfer." *Id.* at ¶ 9. Plaintiffs concede that "a label identifies function but does not allege every member performed every group act." *Id.* at ¶ 11. Although the Complaint asserts that the Release-Record and Transfer Defendants as a group "had authority and an opportunity to investigate, correct the error, and release Ross," *Id.* at ¶ 56, it pleads no facts showing that Harvanek himself, as HMCC Warden, had authority over Ross's sentence computation, his release, or his housing after Ross left HMCC.

This is not Plaintiffs' first attempt at these claims. Plaintiffs first sued ODOC and others on April 7, 2025, in a case removed to this Court as Case No. CIV-25-472-CMS. [CIV-25-472, Doc. 39 at 6]. Plaintiffs first named Harvanek in their Amended Complaint, filed September 12, 2025. [CIV-25-472, Doc. 16; Doc. 29]. Plaintiffs never served Harvanek, and on March 12, 2026, the Court dismissed him and the other unserved defendants without prejudice under Rule 4(m), finding no good cause for Plaintiffs' strategic decision not to serve them. [CIV-25-472, Doc. 31 at 2–5]. The Court later denied Plaintiffs leave to re-add the dismissed defendants, [CIV-25-472, Doc. 39 at 6]. Harvanek respectfully requests that the Court take judicial notice of the docket in that case.

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court first eliminates conclusory allegations, mere labels and conclusions, and any formulaic recitation of the elements of a cause of action," and then assumes the veracity of well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *Horocofsky v. City of Lawrence, Kansas*, 191 F.4th 1226, 1237 (10th Cir. 2026). In a § 1983 action, "it is particularly important ... that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Id.*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction of the subject matter." A rule 12(b)(1) motion "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1189 (10th Cir. 2008) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

## ARGUMENT AND AUTHORITIES

### Proposition I: Counts II and III fail because the Complaint does not plead Harvanek's personal participation.

Section 1983 does not "authorize liability under a theory of respondeat superior." *Lakey v. Bryant*, 181 F.4th 1013, 1027 (10th Cir. 2026). To hold a supervisor liable, a plaintiff "must show an affirmative link between the supervisor and the constitutional violation," which requires "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of

mind." *Id.* A plaintiff "must plead facts sufficient to support such a claim and may not stand on mere conclusory allegations." *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021).

Courts in this Circuit apply these rules to dismiss over-detention claims against wardens and other officials who are not alleged to have controlled the release decision. In *Staats v. Cobb*, this Court held that a warden's "status as Warden is not sufficient, without more," and dismissed the claim because the plaintiff "fail[ed] to allege facts to show that Warden Dowling was authorized to award retroactive credits to Plaintiff or to otherwise determine his release date." *Staats v. Cobb*, No. CIV-11-417-D, 2013 WL 1450504, at 4–5 (W.D. Okla. Apr. 9, 2013). The Tenth Circuit has likewise affirmed dismissal of an over-detention claim where the complaint was "devoid of any facts showing that Defendant participated in the computation of Plaintiff's sentence, the determination of his release date, or any event resulting in his alleged over-detention." *Scott v. Carlson*, 596 F. App'x 625, 627 (10th Cir. 2014) (quoting report and recommendation adopted by the district court) (unpublished); see also *Scull v. New Mexico*, 236 F.3d 588, 599 (10th Cir. 2000) (finding no over detention when the defendant was not involved in the delay). Where the officials sued lacked control over the event that caused an over-detention, they "did not cause the overdetention." *Moya v. Garcia*, 895 F.3d 1229, 1234 (10th Cir. 2018).

The Complaint suffers from the same defects here. Harvanek was the Warden of HMCC, and Ross was transferred from HMCC to OSP in November 2023. [Doc. 1-2, ¶ 7; ¶ 27]. Thus, at the time of the alleged over detention, Harvanek was no longer his warden. The Complaint alleges no facts showing that Harvanek calculated Ross's sentence, maintained his release records, had any authority to release him from OSP, or received any specific

communication about his release date while at OSP. The single allegation that Harvanek "knew of the conflicts but refused to verify or correct the underlying inputs" is a bare conclusion, unaccompanied by any fact about when, how, or from whom he learned of them, or what authority he had to correct them. *Id.* at ¶ 57.

The allegations that do mention Harvanek are pleaded on information and belief and in the disjunctive: he "authorized, facilitated, recommended, or knowingly acquiesced" in the diversion. *Id.* at ¶ 27. An allegation that a defendant did one of four things, some of them passive, does not tell Harvanek or the Court what he is alleged to have done. The remaining allegations rest on the collective "Release-Record and Transfer Defendants" label, which Plaintiffs admit "does not allege every member performed every group act." *Id.* at ¶ 11. That is the type of collective pleading the Tenth Circuit has rejected. *Horocofsky*, 191 F.4th at 1237. For these reasons, Counts II and III should be dismissed as to Harvanek.

**Proposition II: Harvanek is entitled to qualified immunity on Counts II and III.**

Because the Complaint does not plausibly allege that Harvanek personally violated Ross's constitutional rights, he is entitled to qualified immunity on the first prong. *See Scott*, 596 F. App'x at 627; *Staats*, 2013 WL 1450504, at 4–5. He is also entitled to qualified immunity on the second prong. A right is clearly established when existing precedent places the question "beyond debate," which typically "requires either a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." *Routt v. Howry*, 835 F. App'x 379, 382 (10th Cir. 2020) (quotation omitted).

In *White v. Lucero*, the Tenth Circuit reversed the denial of qualified immunity to prison officials on an over-detention claim, emphasizing that the plaintiff did "not allege *these three*

*prison officials* were involved in" the underlying sentence-calculation mistake. *White v. Lucero*, 135 F.4th 1213, 1224 (10th Cir. 2025). The Complaint here does not allege that Harvanek made any sentence-calculation mistake, and Plaintiffs cannot identify Supreme Court or Tenth Circuit precedent clearly establishing that a warden of a facility from which an inmate has been transferred violates the Fourteenth Amendment by failing to correct release records maintained elsewhere. Harvanek is entitled to qualified immunity.

**Proposition III: Count III fails to state a § 1983 conspiracy claim against Harvanek.**

Conclusory allegations of an agreement do not state a conspiracy claim under § 1983. In *Horocofsky*, the Tenth Circuit affirmed dismissal where the plaintiff "failed to assert her claims with more than conclusory allegations" and where "allegations need to specify which identified members of a group did what particular acts." *Horocofsky*, 191 F.4th at 1243. Allegations that defendants worked together, met, or shared information "merely establish that the two worked together," not that they agreed to act unlawfully. *Id.*

The Complaint offers nothing more. It alleges that agreements "may be inferred from coordinated acts and communications, shared access to the truth, departures from mandatory duties, mutually reinforcing accounts, and concealment," without identifying any communication, meeting, or coordinated act involving Harvanek. [Doc. 1-2 ¶ 60]. Plaintiffs acknowledge that the records "establishing each agreement's details" are in Defendants' control and that they "will conform the membership and details of each arrangement to the evidence obtained in discovery." [Doc. 1-2, ¶ 51]. A plaintiff cannot plead a conspiracy now and supply the agreement later. Because the Complaint also fails to plead an underlying

constitutional deprivation by Harvanek (Proposition I), Count III fails for that reason as well, and Harvanek is entitled to qualified immunity on it.

**Proposition IV: The GTCA bars the state-law claims against Harvanek.**

Plaintiffs cannot maintain their state claims against Harvanek (Count IV negligence/gross negligence, Count V wrongful death, or Count VIII civil conspiracy). Harvanek is an ODOC employee, and the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 *et seq.*, forecloses individual tort liability for acts within the scope of his employment. Before the GTCA, the State and its agencies enjoyed common-law sovereign immunity. The GTCA "adopts the doctrine of sovereign immunity" and provides that the State and its employees acting within the scope of employment "shall be immune from liability for torts," waiving immunity only to the extent provided in the Act. 51 O.S. § 152.1(A)-(B). The GTCA is the exclusive remedy for the torts of governmental employees. *Fuller v. Odom*, 741 P.2d 449, 452 (Okla. 1987); 51 O.S. § 153(B). Scope of employment means "performance by an employee acting in good faith within the duties of the employee's office or employment." 51 O.S. § 152(13).

"In no instance in any such action shall an employee of the state ... acting within the scope of employment be named as defendant; provided, however, such person may be named as defendant under alternative allegations that such person did not act within the scope of employment." 51 O.S. § 153. Plaintiffs' own allegations establish that Harvanek acted within the scope of his employment at all relevant times. There are no facts alleging Harvanek acted in bad faith, nor any non-conclusory allegation that he acted in bad faith. *See Carswell v. Okla. State Univ.*, 1999 OK 102, ¶ 4, 995 P.2d 1118, 1120 (upholding summary judgment dismissing

employees where the plaintiff offered no factual grounds that they acted maliciously or in bad faith). A "government employee acting within the scope of employment is relieved from private liability for tortious conduct." *Martin v. Johnson*, 1998 OK 127, ¶ 28, 975 P.2d 889, 895; *accord Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶ 4, 63 P.3d 535, 537.

Any remedy for within-scope conduct lies against the State, which is itself exempt from liability for "[p]rovision, equipping, operation or maintenance of any prison" and for "injuries by a prisoner to any other prisoner." 51 O.S. § 155(25); *Medina v. State*, 1993 OK 121, 871 P.2d 1379; *Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 2018 OK 90, 432 P.3d 233. This expressly includes the "security of the facility" and "any other services provided for inmates." *Medina,* 871 P.23 at 1384, n. 13. In fact, "the [Oklahoma] Supreme Court's broad reading of this exception makes it impossible to imagine any act of a prison's employee, done within the scope of employment, that is not also in furtherance of the operation of the prison." *Rowell v. Bd. of Cnty. Commissioners of Muskogee Cnty.,* 2021 OK CIV APP 7, ¶19, 485 P.3d 879, 884. The Complaint makes it clear that any action by Harvanek was done in the furtherance of the operation of the prison, namely transferring an inmate or failing to correct records at another prison, and he is therefore not liable under the GTCA.

Plaintiff attempts to get around the GTCA exemption by alleging the generic assertion that "each individual acting willfully, maliciously, corruptly, in bad faith, or otherwise outside the scope of employment is alternatively liable" does not plead facts showing that Harvanek acted in bad faith. [Doc. 1-2 at ¶64]. However, such unsupported conclusory allegations are impermissible. "In considering whether the complaint's allegations are sufficient, the court first eliminate conclusory allegations, mere 'labels and conclusion,' and any 'formulaic

recitation of the elements of a cause of action." *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022), quoting *Twombly*, 550 U.S. at 555.

When the conclusory allegations are eliminated, the facts make it clear that at all times Harvanek was acting within the scope of his employment. The only conduct attributed to Harvanek, participating in or acquiescing in an inmate transfer and failing to correct records at another facility, describes the ordinary administrative functions of a warden. [Doc. 1-2, ¶ ¶27, 47]. Counts IV, V, and VIII should be dismissed as to Harvanek. Any remedy for his within-scope conduct lies, if at all, against the State.

**Proposition V: The state-law claims based on the November 2023 transfer are barred by Oklahoma's one-year inmate limitations period.**

Oklahoma requires that "[a]ll actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of ... the State of Oklahoma ... shall be commenced within one (1) year after the cause of action shall have accrued." 12 O.S. § 95(A)(11). Federal courts in Oklahoma have held that this specific provision, rather than the general two-year period, governs state-law claims based on facts occurring during custody. *Fisher v. Glanz*, No. 14-CV-678-TCK-PJC, 2016 WL 1175239 (N.D. Okla. Mar. 24, 2016).

Plaintiffs' state-law claims against Harvanek rest principally on his alleged role in diverting Ross to OSP "[a]round November 2023." [Doc. 1-2 at ¶¶27, 47, 63, 75]. Any state-law claim based on that diversion accrued when it occurred, and the one-year period of 12 O.S. § 95(A)(11) expired no later than November 2024.

Plaintiffs cannot rescue these claims through the savings statute, 12 O.S. § 100. That statute applies only "[i]f any action is commenced within due time." *Nusbaum v. Knobbe*, 2001 OK CIV APP 52, 23 P.3d 302. It therefore cannot revive a claim that was already time-barred when the prior action was filed. *See Johnson v. City of McAlester*, No. CIV-24-409-RAW-GLJ, 2025 WL 796128, at *2 (E.D. Okla. Jan. 23, 2025). Plaintiffs did not name Harvanek in any pleading until September 12, 2025, roughly ten months after the one-year period on the transfer-based claims had run. [CIV-25-472, Doc. 16]. The prior action thus was not commenced within due time as to those claims, and § 100 does not apply. The transfer-based theories of Counts IV and VIII are time-barred and should be dismissed with prejudice.

## CONCLUSION

For these reasons, Defendant Kameron Christopher Harvanek respectfully requests that the Court dismiss Counts II and III against him for failure to state a claim and on the basis of qualified immunity; dismiss Counts IV, V, and VIII against him as he is immune from liability under the Oklahoma Governmental Tort Claims Act, and dismiss with prejudice, as barred by 12 O.S. § 95(A)(11), the transfer-based theories of Counts IV and VIII. Because this is Plaintiffs' second attempt to assert these claims, deny leave to amend and enter dismissal with prejudice; and grant such further relief as the Court deems just and proper.

Respectfully submitted,

*s/Lauren Ray*

**LAUREN RAY, OBA #22694**
**LEXIE P. NORWOOD, OBA #31414**
Assistant Attorneys General
Oklahoma Office of Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: lauren.ray @oag.ok.gov
lexie.norwood@oag.ok.gov
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are registered participants.

*s/Lauren Ray*
Lauren Ray