**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Rachel Macon, as Administrator and<br>Personal representative of the Estate<br>Of Marquiel D. Ross, Deceased; and<br>Danielle Ross, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>1.State of Oklahoma *ex rel.* Oklahoma<br>Department of Corrections;<br>2.Kameron Christopher Harvanek;<br>3.Brittany Ann Chastang;<br>4.Destine Hayes;<br>5.Jacob Killion;<br>6.Bradley Mooney;<br>7.Tommy Lee Stranahan;<br>8.Kimberly Renee Hall;<br>9.Ashley L. Bills;<br>10.Justin Russell Jordan;<br>11.Dustin Carl Henry;<br>12.Dustin Eugene Willbanks;<br>13.Nanci Sue Battles; and<br>14.John and Jane Does 1-10, all individual<br>Defendants sued in their individual<br>capacities.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26-CV-2519-J |

**<u>DEFENDANT TOMMY LEE STRANAHAN'S MOTION TO DISMISS</u>**

Defendant Tommy Lee Stranahan, in his individual capacity, respectfully moves under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims asserted against him in Plaintiffs' Complaint. Stranahan is not named in any federal count. The Complaint asserts only four Oklahoma-law counts against him: Count IV (negligence and gross negligence), Count VI (intentional infliction of emotional distress), Count VII (improper handling of

human remains and interference with the statutory right of control), and Count VIII (Oklahoma civil conspiracy). Each claim fails as a matter of law. In support of this motion, Stranahan states as follows.

## INTRODUCTION

This action arises from the tragic death of Marquiel Ross, an inmate killed by his cellmate at the Oklahoma State Penitentiary ("OSP") on September 12, 2024. Plaintiffs filed this action alleging federal and state claims against twelve individuals and ten unidentified Does by sorting them into five functional groups and alleging, largely on information and belief, what those groups collectively did. Stranahan is identified only as "the ODOC agent or investigator identified in ODOC's Incident Report." [Doc. 1-2 at ¶7]. He is not alleged to have had any contact with Ross before his death, to have been present in Cell 18, or to have touched, restrained, or moved Ross. Stripped of the group labels and conclusory characterizations, the Complaint alleges a single fact about Stranahan: at about 2:35 pm he was notified that agents from the Office of Inspector General ("OIG") would respond. *Id.* at ¶39. Everything else is pleaded "on information and belief" and in the alternative: that Stranahan "knowingly allowed unauthorized movement or authorized, approved, or ratified it." *Id.* Being told that OIG was on its way is not tortious, much less extreme and outrageous, and it does not show that Stranahan agreed with anyone to do anything unlawful. Stranahan acted, at all times, within the scope of his employment, and every count against him should be dismissed.

## STATEMENT OF THE CASE

Marquiel Ross was received into the custody of the Oklahoma Department of Corrections ("ODOC") on March 29, 2023, to serve a two-year sentence, and remained in

custody until his death on September 12, 2024. While housed at OSP, Ross was celled with Justin Harris, beginning on September 11, 2024. [Doc. 1-2 at ¶30]. On September 12, 2024, Ross was found unresponsive in his cell and died. Harris has since been charged with first-degree murder as a result of Ross's death.

Plaintiffs first sued ODOC and others in Oklahoma County on April 7, 2025. Defendants removed the case to the Western District of Oklahoma, Case No. CIV-25-472-CMS. On June 11, 2025, the Court dismissed ODOC because the Eleventh Amendment barred federal damages relief and ODOC is not a "person" under § 1983. The twelve individual defendants, including Stranahan, were added by amendment but never served, and on March 12, 2026, the Court dismissed them without prejudice under Rule 4(m) for nonservice. Plaintiffs then filed the present Complaint on August 6, 2026, again naming Stranahan in his individual capacity.

The individualized factual allegations concerning Stranahan are these:

1. Stranahan was the ODOC agent or investigator identified in ODOC's Incident Report concerning Ross's death.[Doc. 1-2 at ¶7].
2. Stranahan was notified at about 2:35 pm that agents from the Office of Inspector General ('OIG') would respond- before Ross's pronouncement and before a further movement at about 2:45 pm. *Id.* at ¶39.
3. On information and belief, Stranahan knowingly allowed unauthorized movement or authorized, approved, or ratified it despite incomplete preservation. *Id.*

There are no other allegations specific to Stranahan. The Complaint does not allege who moved Ross at 2:45 pm, where Ross was moved to, where Stranahan was, or what Stranahan said or did in response to the OIG notification. It does not allege that Stranahan was present

in Ross's cell, kept any scene log, handled any evidence, or had custody of Harris. *See Id.*. at ¶¶33-41. The remaining allegations against Stranahan are group labels and lists. He is placed in the "Death-Scene and Investigation Defendants" group, *Id.* at ¶10, and his name appears in lists of defendants who were "notified" of ODOC procedures, *Id.* at ¶42, or who "[o]n information and belief . . . participated in, directed, approved, or ratified" the post-death notification, records, and cremation post death arrangements. *Id.* at ¶¶45, 50, 63, 75. On these facts, Plaintiffs assert Counts IV, VI, VII, and VIII against Stranahan.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT AND AUTHORITIES

### Proposition I: The Complaint's undifferentiated group pleading fails Rule 8 and *Iqbal* as to Stranahan.

In cases involving multiple defendants, "it is particularly important" that a complaint "make clear exactly who is alleged to have done what to whom," so as to provide each individual defendant fair notice of the claims against that defendant, "as distinguished from collective allegations." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). A plaintiff's "undifferentiated contention that 'defendants' infringed his rights" will not suffice; the plaintiff "must identify specific actions taken by particular defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013).

The Complaint does exactly what *Robbins* forbids. It assigns twelve individuals and ten Does to five functional groups and then pleads group conduct. Where defendants' alleged acts "are entirely different in character," lumping them into a single collective allegation "makes it impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250. This is especially true for Defendant Stranahan. Outside of a single sentence that he received notice that OIG would respond, every allegation against him is in the context of a group and conclusory statements that he "participated in" or "approved" or "ratified." [Doc. 1-2 at ¶¶45, 50]. The Complaint never says which of these things Stranahan did, when, or with whom. Such conclusory allegations "are not entitled to the presumption of truth." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). A recent Oklahoma federal decision dismissed materially identical pleading (counts referring only to a defined defendant group and to "Defendants" collectively)

as failing on its face under Rule 8(a). *Est. of Janota v. Love Cnty. Bd. of Comm'rs*, 830 F. Supp. 3d 1133 (E.D. Okla. 2026). The same result follows here as to Stranahan.

**Proposition II: The Oklahoma Governmental Tort Claims Act bars the state-law claims against Stranahan.**

Stranahan is an ODOC employee, and the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 *et seq.*, forecloses individual tort liability for acts within the scope of his employment. Before the GTCA, the State and its agencies enjoyed common-law sovereign immunity. The GTCA "adopts the doctrine of sovereign immunity" and provides that the State and its employees acting within the scope of employment "shall be immune from liability for torts," waiving immunity only to the extent provided in the Act. 51 O.S. § 152.1(A)-(B). There is a presumption of immunity for state employees. *Rooks v. State ex rel. Okla. Corp. Comm'n*, 1992 OK CIV APP 155, ¶¶6, 10, 842 P.2d 773, 777. The GTCA is the exclusive remedy for the torts of governmental employees. *Fuller v. Odom*, 741 P.2d 449, 452 (Okla. 1987); 51 O.S. § 153(B). Scope of employment means "performance by an employee acting in good faith within the duties of the employee's office or employment." 51 O.S. § 152(13).
Critically, "[i]n no instance . . . shall an employee of the state . . . acting within the scope of employment be named as a defendant." 51 O.S. § 153(C). Plaintiffs' own allegations establish that Stranahan acted within the scope of his employment. He is sued because he was the ODOC agent or investigator identified in the Incident Report, and the only conduct attributed to him is receiving notice that OIG would respond. [Doc. 1-2 at ¶¶7, 39]. Investigating an inmate death, coordinating with OIG, and documenting the incident are core functions of an ODOC investigator. There are no facts showing he acted in bad faith, nor any non-conclusory

allegation that he acted in bad faith. *See Carswell v. Okla. State Univ.*, 1999 OK 102, ¶4, 995 P.2d 1118, 1120 (dismissing employees where the plaintiff offered no factual grounds that they acted maliciously or in bad faith). A "government employee acting within the scope of employment is relieved from private liability for tortious conduct." *Martin v. Johnson*, 1998 OK 127, ¶28, 975 P.2d 889, 895; *accord Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶4, 63 P.3d 535, 537.

Any remedy for within-scope conduct lies against the State, which is itself exempt from liability for "[p]rovision, equipping, operation or maintenance of any prison" and for "injuries by a prisoner to any other prisoner." 51 O.S. § 155(25); *Medina v. State*, 1993 OK 121, 871 P.2d 1379; *Barrios v. Haskell*, 2018 OK 90. This expressly includes the "security of the facility" and "any other services provided for inmates." *Medina*, 871 P.2d at 1384 n.13. In fact, "the [Oklahoma] Supreme Court's broad reading of this exception makes it impossible to imagine any act of a prison's employee, done within the scope of employment, that is not also in furtherance of the operation of a prison." *Rowell v. Bd. of Cnty. Commissioners of Muskogee Cnty.*, 2021 OK CIV APP 7, ¶19, 485 P.3d 879, 883. The investigation of an in-custody death is part of the operation of the prison.

Plaintiffs attempt to get around the GTCA by alleging, without support, that each individual defendant acted "willfully, maliciously, corruptly, [or] in bad faith" and for "outside the scope of employment." [Doc. 1-2 at ¶¶24-25, 64]. Such unsupported conclusory allegations are impermissible. In considering whether a complaint's allegations are sufficient, the court first eliminates conclusory allegations, mere "labels and conclusions," and any "formulaic recitation of the elements of a cause of action." *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir.

2022) (quoting *Twombly*, 550 U.S. at 555). The Complaint's sole charge of bad faith against Stranahan is this: an alternative, information-and-belief assertion that he "knowingly allowed unauthorized movement or authorized, approved, or ratified it despite incomplete preservation." *Id.* at ¶39. However, there is no allegation that Stranahan was involved with any movement, that he ordered any movement, or even knew about it. *Id.* The Complaint only alleges that he was informed OIG would respond, and thereafter Ross was moved, but the Complaint is silent by who, or where Ross was moved *Id.* The facts show only that Stranahan was performing his duties as ODOC agent or investigator. That within-scope conduct cannot support Count IV (negligence and gross negligence), Count VI (intentional infliction of emotional distress), or Count VII (improper handling of human remains) against him individually.

**Proposition III: Plaintiff has not stated a claim for improper handling of human remains and interference with the statutory right of control.**

Count VII asserts, on behalf of Danielle Ross individually, a claim for improper handling of human remains and interference with the statutory right of control under 21 O.S. § 1158. [Doc. 1-2 at ¶¶71-73]. Section 1158 addresses "[t]he right to control the disposition of the remains of a deceased person, the location, manner and conditions of disposition, and arrangements for funeral goods and services . . . ." As addressed above, Stranahan's alleged conduct was within the scope of his employment, and he is therefore not individually liable under the GTCA.

The claim also fails independent of the GTCA. Section 1158 protects the next of kin's statutory right to control the disposition of the remains. *See Guilbeau v. Durant H.M.A., LLC*,

2023 OK 80, ¶25, 533 P.3d 764, 772 (husband "had the right to control the disposition of his wife's remains"). Such control includes the right to consent prior to cremation. *See Criswell Funeral Home, Inc.*, 1996 OK CIV APP 1, 916 P.2d 269, 271. Plaintiffs plead no facts suggesting that Stranahan was involved in any "disposition" of Ross's remains. The Complaint alleges no involvement by Stranahan in notifying Ross's family, communicating with the Medical Examiner or any funeral home, or initiating or authorizing any cremation. Instead, it alleges generally that "ODOC personnel" caused a funeral provider to initiate cremation, and it assigns the persons who "initiated cremation steps" to a group of Does. [Doc. 1-2 at ¶¶43-44].

To the extent Count VII rests on the alleged 2:45 pm movement of Ross's body, the Complaint does not allege that Stranahan moved the body, directed anyone to move it, or was present when it was moved. [Doc. 1-2 at ¶39]. Plaintiffs' conclusory claims that Stranahan "knowingly allowed" or "ratified" that movement is the type of conclusory allegation that is not entitled to the presumption of truth. *Kansas Penn Gaming*, 656 F.3d at 1214. Absent any individualized allegation tying Stranahan to conduct that invaded Danielle Ross's right of control, Count VII fails to state a claim against him.

**Proposition IV: Count VI fails to state a claim for intentional infliction of emotional distress.**

To state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, ¶7, 49 P.3d 732, 735. The trial court acts as a "gatekeeper" and must first determine whether the defendant's conduct "may reasonably be regarded as

sufficiently extreme and outrageous" to permit recovery. *Warren v. U.S. Specialty Sports Ass'n*, 138 P.3d 580, 585 (Okla. Civ. App. 2006). Liability attaches only where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Breeden v. League Servs. Corp.*, 1978 OK 27, ¶12, 575 P.2d 1374, 1376. Whether conduct is extreme and outrageous "must be considered in the setting in which the conduct occurred." *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 856-58 (10th Cir. 2005). Conduct "which, though unreasonable, is neither 'beyond all bounds of decency' in the setting in which it occurred, nor is one that can be 'regarded as utterly intolerable in a civilized community,' falls short of having actionable quality." *Eddy v. Brown*, 1986 OK 3, ¶7, 715 P.2d 74, 77.

Conduct done in the scope of employment cannot be intentional infliction of emotional distress as there is no way to prove a claim for intentional infliction of emotional distress if the defendant has acted in good faith. *McMullen v. City of Del City*, 1996 OK CIV APP 46, 920 P.2d 528, 531 (finding there is no claim for outrage if the defendant acted in good faith); *Erikson v. Oklahoma*, No. CIV-16-657-R, 2017 WL 3319317 at *2 (W.D. Okla. Jan. 4, 2017) (Finding plaintiff's intentional infliction for emotional distress claim failed as a matter of law under the OGTA because it "necessarily excludes good faith conduct on the part of a political subdivision or its employee"), aff'd, 690 F. App'x 620 (10th. Cir. 2017) (unpublished). Receiving notice of OIG's response to an inmate death would not cause "an average member of the community" to "exclaim, 'Outrageous!'" *Breeden*, 1978 OK 27, ¶8, 575 P.2d at 1376 (quoting Restatement (Second) of Torts § 46 cmt. d).

Plaintiffs also allege a post-death course of concealment. [Doc. 1-2 at ¶¶68-69]. But no facts tie Stranahan to any act of concealment. Instead, the Complaint lumps Stranahan with the "Death-Scene and Investigation" and "Family-Notification, Records, and Remains" Defendants, alleging on information and belief that these Defendants "participated in, directed, approved, or ratified" the concealment. *Id.* at ¶¶10, 45, 68. Such group-based, conclusory allegations are insufficient under *Iqbal* and *Robbins*. Plaintiff's claims must be dismissed.

Regardless, the concealment theory falls short of extreme and outrageous conduct as to Stranahan. In *Trentadue*, the conduct included nondisclosure of the unusual circumstances of a federal inmate's death, obstruction of an autopsy, and the failure to tell the family of the body's battered condition. 397 F.3d at 857-58. The conduct pleaded against Stranahan involves no such aggravating circumstances. There is no allegation that Stranahan made any statement to Plaintiffs, prepared or altered any death or transfer record, communicated with the Medical Examiner or a funeral home, or authorized or initiated a cremation. Count VI must be dismissed as to Stranahan.

**Proposition V: Count VIII fails to state a claim for Oklahoma civil conspiracy.**

The elements of civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Shoemaker Corp. III, Inc. v. Garrett*, 704 F. Supp. 3d 1222, 1259 (N.D. Okla. 2023); *see Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶46, 188 P.3d 158, 175. The agreement must be inferable from facts showing "that the

parties united to accomplish" an unlawful scheme. *N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank*, 222 F.3d 800, 815 (10th Cir. 2000).

The Complaint alleges no agreement between Stranahan and anyone, nor does it allege any facts to support any agreement. Instead, Plaintiffs allege that Stranahan, along with others, "acted in concert" and that he "advanced post-death concealment" without support. [Doc. 1-2 at ¶¶50, 75]. Plaintiffs concede that they do not know the details of any agreement, as the Complaint states they "will conform the membership and details of each arrangement to the evidence obtained in discovery." *Id.* at ¶51. However, the one concrete allegation about Stranahan is that he received notice OIG would respond. This describes the ordinary performance of an investigator's job, not a meeting of the minds.

There also "can be no civil conspiracy where the act complained of and the means employed are lawful." *Brock v. Thompson*, 1997 OK 127, ¶39, 948 P.2d 279, 294; *accord Cmty. Resourcing Inc. v. Berkshire Hathaway Specialty Ins.*, 2026 OK 53, 593 P.3d 115. Because the underlying Oklahoma tort theories against Stranahan fail and are barred under the GTCA, the derivative conspiracy count fails as a matter of law.

Furthermore, Count VIII is untimely. Actions "based upon facts that occurred while the person was an inmate in the custody of the State" "shall be commenced within one (1) year after the cause of action shall have accrued." 12 O.S. § 95(A)(11). The events underlying the alleged conspiracy occurred in September 2024, but civil conspiracy was first asserted in 2026, well outside the one-year period. [Doc. 1-2 at ¶¶32, 74-76].

## CONCLUSION

Defendant Tommy Lee Stranahan respectfully requests that the Court dismiss all claims against him. The Oklahoma-law counts asserted against him (Counts IV, VI, VII, and VIII) should be dismissed under the GTCA and for failure to state a claim.

Respectfully submitted,

*s/Lauren Ray*

**LAUREN RAY, OBA #22694**
**LEXIE P. NORWOOD, OBA #31414**
Assistant Attorneys General
Oklahoma Office of Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: lauren.ray @oag.ok.gov
lexie.norwood@oag.ok.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are registered participants.

*s/Lauren Ray*
Lauren Ray